UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LOUIS FERRARO, PATRICIA FERRARO,    )
                                    )
        Plaintiffs,                 )
                                    )    CIVIL ACTION NO.
v.                                  )    08-11065-DPW
                                    )
SEAN M. KELLEY,                     )
                                    )
        Defendant.                  )

MEMORANDUM AND ORDER
February 8, 2011

Plaintiffs Louis Ferraro and his wife, Patrice Ferraro, brought this action against Massachusetts State Trooper Sean M. Kelley, alleging that Trooper Kelley slammed Mr. Ferraro's fingers in the cell door while he was in custody, causing him permanent injury. Having prevailed at trial, Mr. Ferraro now seeks attorney's fees pursuant to 42 U.S.C. § 1988. For the reasons cited below, I will grant Plaintiff's petition with certain adjustments.

## I.  BACKGROUND

The facts as developed at trial are as follows. Louis Ferraro was arrested for driving under the influence and taken to the Andover State Police Station on December 14, 2006. During booking, Trooper Kelley requested Ferraro to remove his belt, his watch, and his shoes. Ferraro complied with Kelley's requests. However, when Kelley instructed Ferraro to remove his wedding band, Ferraro refused to do so and the two began to struggle.

Trooper Kelley then placed cuffs around Ferraro's ankles and took him to a cell with the assistance of Trooper James A. Leduc. Once in the cell, Kelley forcibly removed Ferraro's wedding ring from his left hand finger. As Ferraro was trying to stand on his feet, he lost his balance because of the cuffs. He eventually stopped himself from falling by placing his left hand against the door jamb. Meanwhile, Kelley slammed the cell door shut, severing the tips of Ferraro's third and fourth fingers. Ferraro was later taken to the hospital, but the doctors were unable to reattach the tips of his fingers. As a result of the incident, Ferraro has suffered great pain and has been unable to perform certain daily tasks.

Louis Ferraro and his wife brought a seven-count complaint, on June 23, 2008, alleging violation of 42 U.S.C. § 1983 (Count I), violation of Massachusetts Civil Rights Act, codified as MASS. GEN. LAWS ch. 12, § 11I, (Count II), assault (Count III), battery (Count IV), intentional infliction of emotional distress (Count V), loss of consortium (Count VI) and negligence pursuant to MASS. GEN. LAWS ch. 258, § 1 *and seq.* (Count VII) against both Kelley and Leduc. The negligence claim was dismissed on December 8, 2008 in light of *Rivera v. Com. of Mass.*, 16 F. Supp. 2d 84 (D. Mass. 1998), and re-filed in the Suffolk Superior Court for the Commonwealth of Massachusetts. In addition, all claims against Trooper Leduc were dismissed by Plaintiffs on November 13, 2009.

A three-day jury trial was held before me from May 3 to May 5, 2010. During that trial, Plaintiffs waived all remaining counts alleged in the original complaint, with the exception of the § 1983 claim. After deliberations, the jury attempted to return a *first* verdict in favor of Plaintiffs, finding that Trooper Kelley had slammed Mr. Ferraro's fingers in the cell door intentionally or with deliberate indifference. In this verdict, the jury awarded "$5,000" to Mrs. Ferraro for loss of consortium, but granted "$0" in damages to Mr. Ferraro. Because the jury had found that Trooper Kelley had violated Mr. Ferraro's constitutional rights, but yet refused to award him *any* damages - let alone nominal damages — I determined the verdict to be defective and sent the jury back for further deliberation.

Shortly thereafter, the jury inquired about the amount Mr. Ferraro "ha[d] to pay out of pocket for his medical bills." After consultation with counsel, I informed the jury in writing that the medical bills were contained in the exhibits introduced into evidence. In addition, I instructed the jury that "if [they found] a constitutional violation . . ., but [we]re unable to establish and agree upon a damage figure in specific numbers without speculation, [they could] award nominal damages of $1.00." In response, the jury successfully returned a *second* verdict finding the constitutional violation and awarding $14,330.25, the total of the medical bills introduced into

evidence, to Mr. Ferraro, and $2,500 to Mrs. Ferraro for loss of consortium. I entered judgment in favor of Plaintiffs reflecting the jury's second verdict on May 6, 2010.

## II. DISCUSSION

Plaintiff[1] filed a request for attorney's fees seeking to recover $79,732.50[2] in legal services and $3,644.72 in expenses.

---

[1] There is no dispute, here, that Patrice Ferraro would not be entitled to attorney's fees independently under 42 U.S.C. 1988; her loss of consortium claim depends on the viability of her husband's § 1983 claim. *See Sena v. Com.*, 629 N.E.2d 986, 994 (Mass. 1994) ("Although we have determined that a claim for loss of consortium is independent of the spouse's cause of action, we have not repudiated the implicit prerequisite that the injured spouse have a viable claim.") (internal citation omitted). Accordingly, this Memorandum and Order will refer to Louis Ferraro, as "Plaintiff," unless otherwise indicated.

[2] Two points of clarification are necessary to understand the amount of attorney's fees sought by Plaintiff. *First*, Plaintiff voluntarily discounted the time spent on two tasks - i.e., drafting the letter required pursuant to MASS. GEN. LAWS ch. 258, § 4 and the complaint -, both of which pertain to the re-filing of the negligence claim in the Suffolk Superior Court, for a total amount of $2,036.00. (Decl. of Robert Sinsheimer, ¶¶ 19-21.) *Second*, the $79,732.50 amount includes $76,414.50 for the time spent until the end of the trial and $3,318.00 for the time spent preparing the present fee petition. (*Id.* Ex. 2-3, 6.) There is a slight discrepancy between the numbers cited above and the numbers stated in Plaintiff's motion; the motion indicates that the fees sought for work performed *before* the present petition is $77,086.00 and the fees sought *for* the petition is $2,646.50. (Pl.'s Mot. p. 1.) This is due to the fact that Plaintiff counted the 1.70 hours ($671.50) spent by Attorney Sinsheimer in preparation of the fee petition on May 6, 2010 towards the fees incurred prior to the petition. (Decl. of Robert Sinsheimer, Ex. 3.) The discrepancy does not change the total amount of fees sought, which is $79,732.50. The distinction between the hours expended prior to, or for purposes of, the fee petition is, in any event, without consequence in light of the fact that "[a] prevailing party in a civil rights action normally is entitled to attorney's fees incurred in the

4

Defendant Kelley challenges the requested fees on grounds that they are excessive, duplicative, unrelated to the single successful claim, or otherwise based on time records lacking the required degree of specificity and details.  To provide context, before turning to the calculation of attorney's fees, I will address how Plaintiff qualifies as a "prevailing party" entitled to attorney's fees and costs under 42 U.S.C. § 1988.

## A.    Plaintiff is a "Prevailing Party"

Under the "American Rule," each party generally bears its own attorney's fees in the absence of any express statutory authority to the contrary.  *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975).  In response to *Alyeska*, Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, codified as 42 U.S.C. § 1988, to provide "effective access to the judicial process" for individuals whose civil rights have been violated.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H. R. REP. No. 94-1558, p. 1 (1976)); *De Jesús Nazario v. Morris Rodríguez*, 554 F.3d 196, 199 (1st Cir. 2009) (same).  Section 1988 provides that in federal civil rights actions "the court may, in its discretion, allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b) (2000).  A party qualifies as a "prevailing

pursuit of fees under section 1988."  *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008).

party" when it "succeed[s] on any significant issue in litigation which achieves some of the benefit [it] sought in bringing suit." *Hensley*, 461 U.S. at 433 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)); *Boston's Children First v. City of Boston*, 395 F.3d 10, 14 (1st Cir. 2005) (same).

In this case, Defendant does not contest that Plaintiff is a prevailing party. *See Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 453 (1st Cir. 2009) ("A plaintiff who receives a favorable judgment on the merits of a claim is the classic example of a 'prevailing party.'"). Rather, he urges that Plaintiff obtained such modest success that a reduction must be made in the amount of fees and expenses requested. *See* Section II.B.3.b & c *infra*. Defendant's objections are therefore "directed to the *amount* of [the] attorney's fees award, not its *availability*." *Jesús Nazario*, 554 F.3d at 202; *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("Once civil rights litigation materially alters the legal relationship between the parties, the degree of the plaintiff's overall success goes to the reasonableness of a fee award under *Hensley* v. *Eckerhart*.") (internal quotation and citation omitted). Accordingly, I now turn to the question whether the amount of attorney's fees requested is reasonable.

**B.    *The Calculation of the Lodestar***

The reasonableness of a fee is generally assessed by the so-called "lodestar method," which consists of multiplying "the

number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "In crafting its lodestar, the trial court may adjust the hours claimed to remove time that was unreasonably, unnecessarily or inefficiently devoted to the case, and subject to principles of interconnectedness, the trial court may disallow time spent litigating failed claims." *Jesús Nazario*, 554 F.3d at 207 (internal citation omitted). "It also may adjust the lodestar itself, upwards or downwards, based on any of several different factors, including the results obtained and the time and labor actually required for the efficacious handling of the matter." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008).

### 1. Reasonableness of Hours Expended

The contemporaneous billing records from Denner Pellegrino, LLP and Sinsheimer & Associates, LLP[3] indicate that Attorney Robert Sinsheimer spent 110.20 hours[4] on this case, Attorney

---

[3] When Attorney Robert Sinsheimer initially took on the present case, he was affiliated with Denner Pellegrino, LLP. (Decl. of Robert Sinsheimer, ¶ 9.) In 2009, he left this firm to establish his own practice, Sinsheimer & Associates, LLP. (*Id.*)

[4] Attorney Robert Sinsheimer worked a total of 113.40 hours - i.e., 11.00 hours at Denner Pellegrino, LLP and 102.40 hours at Sinsheimer & Associates, LLP - on this case, but Plaintiff agreed to discount the 3.20 hours he worked on the state matter. (*Id.* ¶ 21, Ex. 2-3.)

Lauren Thomas 108.80 hours,[5] Attorney Tanya Austin 14.30 hours[6] and K.[7] Sheehan, a paralegal, 13.55 hours.[8] Defendant's sole argument to show that the hours expended are unreasonable turns on the contention that the case was overstaffed.

It is well-settled that fee-shifting statutes are not designed "to serve as full employment or continuing education programs for lawyers or paralegals." *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992). Therefore, "a court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." *Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 297 (1st Cir. 2001). Nevertheless, "[g]iven the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic" which does not warrant the reduction of attorney's fees. *Id.*

---

[5] Attorney Lauren Thomas worked a total of 109.00 hours - i.e., 21.70 hours at Denner Pellegrino, LLP and 87.30 hours at Sinsheimer & Associates, LLP - on this case, but Plaintiff agreed to discount the 0.20 hours she worked on the state matter. (*Id.*)

[6] Attorney Tanya Austin, formerly known as Tanya Stankunis, worked a total of 15.10 hours on this case, but Plaintiff agreed to discount the 0.80 hours she worked on the state matter. (*Id.* Pl.'s Reply, Ex. 2.)

[7] Ms. Sheehan's first name is not provided in the record.

[8] The record also indicates that "CM," apparently a paralegal/legal intern employed at Denner Pellegrino, LLP, performed work in this case for 5.8 hours. (Decl. of Robert Sinsheimer, Ex. 2.) But Plaintiff has agreed to discount several hours pertaining to the re-filing of the negligence claim in state court, *see* Note 2 *supra*, including the 5.8 hours recorded for "CM." (*Id.* ¶ 21.)

"In short, the district court must weigh and consider the claim of overstaffing, using its intimate knowledge of the case, and make specific findings thereon." *Poy v. Boutselis*, 352 F.3d 479, 490 (1st Cir. 2003).

In an effort to demonstrate overstaffing, Defendant singles out certain entries that appear to be duplicative. One of the identified entries dated November 14, 2008 — described as "Telephone call to both opposing counsel; Edit scheduling report; Appearance; Telephone call to client — was entered twice, once for an unidentified person bearing the initials "DR" and the other for Attorney Thomas. (Decl. of Robert Sinsheimer, Ex. 2, p. 2.) Another entry identified by Defendant, which consists of "Review case cited by court regarding jurisdiction" dated November 17, 2009, was also entered twice, once for "DR" and the other for Attorney Thomas. (*Id.* at 3.) In his Reply, Plaintiff recognized that these entries were clerical errors and agreed to disregard the attorney's fees resulting from them - i.e., $177.[9] In any event, the hours allegedly performed by "DR" were not included in the first place in Plaintiff's request for attorney's

---

[9] Plaintiff states in his Reply that the duplicative entries identified by Defendant reduce the attorney's fees by "$167.00." (Pl.'s Reply p. 3.) However, the amount reflected in the record for the work erroneously recorded for "DR" is "$117.00" for the November 14, 2008 entry and "$60.00" for the November 17, 2008 entry. (Pl.'s Ex. 2, pp. 2-3.) The addition of these two entries amounts to $177.00, rather than $167.00.

fees. Thus, these clerical discrepancies are of no fundamental significance for purposes of the present motion.

In addition, Defendant has identified two entries, which he claims were "unwarranted." These two entries reflect the time Attorney Sinsheimer spent to "Go to court" on April 13, 2010 (1.2 hours) and the "Final edits to jury instructions, appearance" made by Attorney Thomas on that same day (1.3 hours). (*Id*. at 2, 11.) These two entries suggest nothing more than what the ordinary course of litigation requires. Clearly, "[e]ffective preparation and presentation of a case often involve the kind of collaboration that only occurs when several attorneys are working on a single issue." *Gay Officers,* 247 F.3d at 297. Consequently, I find these two entries, and more generally the hours expended by Plaintiff' counsel in this case, to be reasonable and recoverable. I turn to the requested hourly rates.

2.   Reasonableness of Hourly Rates

Defendant argues that the hourly rates charged by Plaintiff's counsel are unreasonably high or otherwise unsupported by sufficient documentation demonstrating the attorney's qualifications.[10]

---

[10] Defendant also contends that certain secretarial or clerical tasks were improperly charged at an attorneys' rate, where this type of tasks should be charged at a lower rate. Nevertheless, Defendant has failed to identify a single entry supporting this argument. Accordingly, I reaffirm the view I

As a general principle, "a district court . . . is not bound by the hourly rate requested by the victor's counsel." *Bogan v. City of Boston*, 489 F.3d 417, 429 (1st Cir. 2007) (quoting *Phetosomphone v. Allison Reed Grp., Inc.*, 984 F.2d 4, 8 (1st Cir. 1993) (internal quotation marks omitted)).  Rather, the lodestar method requires trial judges to apply reasonable hourly rates to the number of hours extended.  In calculating a reasonable hourly rate, the court should consider "the prevailing market rates in the relevant community."  *United States v. One Star Class Sloop Sailboat*, 546 F.3d 26, 40 (1st Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  This involves considering "such factors as the type of work performed, who performed it, the expertise that it required, and when it was undertaken."  *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 951 (1st Cir. 1984).  "The relevant community for determining hourly rates is the community where the court sits."  *Fryer v. A.S.A.P. Fire and Safety Corp., Inc.*, No. 09-10178, --- F. Supp. 2d ----, 2010 WL 4371430, at *6 (D. Mass. Nov. 4, 2010).  Having determined the applicable legal standard, I will address each attorney and paralegal's hourly rate in turn.

---

expressed in *Porter v. Cabral*, No. 04-11935, 2007 WL 602605, at *12 n.13 (D. Mass. Feb. 21, 2007) by declining to make a distinction between "core" legal work and "non core/clerical" work.  Instead, "I will apply a single rate, which takes the variety of lawyers' tasks into account through a single, blended hourly rate that more closely mirrors the usual billing practices of law firms without introducing artificial distinctions among the various activities attorneys perform."  *Id.*

*a. Attorney Robert Sinsheimer*

An hourly rate of $395 is requested for Robert Sinsheimer.
In support of this request, he submitted his own affidavit, as
well as an affidavit from Denis King, director of Goulston &
Storrs, P.C., and the affidavit of Joseph Savage, Jr., partner at
Goodwin Procter, LLP.

Sinsheimer's affidavit shows that he has been a member of
the Massachusetts bar for over thirty years and has tried
numerous cases, both at the federal and the state level. (Decl.
of Robert Sinsheimer, ¶ 2.)  Sinsheimer graduated from Suffolk
University Law School and is currently an Adjunct Professor of
Law at that institution. (*Id.*)  Sinsheimer has been involved in
civil rights litigation since 1985, when he was appointed civil
rights prosecutor for Plymouth County. (*Id.* ¶ 4.)  When he was
at Denner Pellegrino, LLP, Sinsheimer's hourly rate was $450.
(*Id.* p. 9.)  Sinsheimer reduced his hourly rate to $395 when he
re-established his own practice in 2009. (*Id.*)

In support of his contention that $395 is the prevailing
rate for attorneys with his experience, Sinsheimer principally
relies on the affidavits of Denis King and Joseph Savage.  King
has been practicing law for almost thirty years and has been the
Director of Goulston & Storrs, P.C. since 1992. (Decl. of Denis
King, ¶¶ 2, 4.)  King asserts that the litigation partners at his
firm with 20-30 years of experience have an hourly rate in excess
of $500. (*Id.* ¶ 4.)  Based on his knowledge of billing rates

12

applicable for attorneys with comparable experience in Boston, and his experience of working with Sinsheimer, King considers Sinsheimer's hourly rate of $395 to be "relatively low." (*Id*. ¶ 5.) Like King, Savage is a seasoned attorney with about thirty years of experience in complex civil and criminal litigation, including civil rights cases. (Decl. of Joseph Savage, ¶ 2.) Savage has been a partner at Goodwin Procter, LLP since 2005 and contends that senior litigation partners in large firms in Boston apply hourly rates of over $750. (*Id*. ¶ 8.) Based on his knowledge of local billing rates and his experience with Sinsheimer, Savage claims that a rate of $395 is "exceedingly modest" in Boston for an attorney with his experience and qualifications. (*Id*. ¶ 11.) I note that in 2007, I set a rate of $325 for Savage in a civil rights case. *Porter v. Cabral*, No. 04-11935, 2007 WL 602605, at *13 (D. Mass. Feb. 21, 2007).

Defendant, on the other hand, contends that $395 is "beyond" prevailing rates in the community for comparably qualified attorneys in civil rights matters. In this connection, Defendant relies on cases issued between 2000 and 2003, in which judges in this District approved hourly rates ranging from $200 to $250 for experienced civil rights attorneys. *See*, *e.g.*, *Martinez v. Hodgson*, 265 F. Supp. 2d 135, 143 (D. Mass. 2003) (Young, J.) (reducing hourly rate from $350 to $225 in a civil rights case for attorney with over thirty years of experience); *Baione v. City of Boston*, No. 01-11313, 2003 WL 79034, at *2 (D. Mass. Jan.

13

9, 2003) (O'Toole, J.) (reducing hourly rate from $300 to $225 in a civil rights case); *Martino v. Mass. Bay Transp. Auth.*, 230 F. Supp. 2d 195, 205 (D. Mass. 2002) (Young, J.) (reducing hourly rate from $260 to $200 in a civil rights case for attorney with twenty four years of experience); *Rolland v. Cellucci*, 106 F. Supp. 2d 128, 143 (D. Mass. 2000) (Neiman, J.) (approving hourly rate of $250 for attorney in a civil rights case).

Having reviewed the materials produced by Plaintiff, and considered Defendant's argument, I find an hourly rate of $350 to be reasonable for Sinsheimer's work. Defendant relies on decisions that are seven years old or older to justify a greater reduction of Sinsheimer's hourly rate. It is reasonable as time passes for billing rates to increase. This is not only the result of inflation, but also the recognition that qualified individuals tend to become more experienced with time and should be compensated accordingly. As Judge O'Toole noted in a more recent decision involving Attorney Sinsheimer, "rates change with time," and Sinsheimer has therefore "been able to demand a higher hourly rate in the market than" several years before. *Burke v. McDonald*, No. 00-10376, 2007 WL 2826248, at *3 (D. Mass. Sept. 28, 2007) (O'Toole, J.). Acknowledging this reality, Judge O'Toole approved an hourly rate for Sinsheimer of $300 for fees charged after April 2005. *Id.* A period of approximately three years has passed since Judge O'Toole's decision was issued and the billing rates have undeniably continued to increase, as

evidenced by more recent decisions.  *See*, *e.g.*, *Fryer*, 2010 WL
4371430, at *7 (Bowler, M.J.) (finding "hourly rates of $325 and
$350 reasonable and in line with rates of comparably skilled
attorneys in the Boston community."); *Tri-City Cmty. Action
Program, Inc. v. City of Malden,* 680 F. Supp. 2d 306, 315-16 (D.
Mass. 2010) (Gertner, J.) (approving hourly rate of $350 for "the
founding partner and head of litigation" of a law firm).  With
this trajectory to the case law in mind, I will employ an hourly
rate of $350 for Sinsheimer in the lodestar analysis.

   b.   Attorney Lauren Thomas

   An hourly rate of $290 is requested for Lauren Thomas.[11]
The resume of Thomas shows that she graduated from the New
England School of Law in 2006 and has been a member of the
Massachusetts Bar since 2007.  (Pl.'s Reply, Ex. 8.)  Following
graduation, Thomas worked with several criminal defense
attorneys.  *Id*.  She has been working with Sinsheimer since March
2007, both at Denner Pellegrino, LLP, and at Sinsheimer &
Associates, LLP.  *Id*.  Since that date, Thomas has managed her
own cases and has successfully tried on her own a criminal case
before the Boston Municipal Court.  (Decl. of Robert Sinsheimer,
¶ 10.)

---

[11]  Plaintiff initially failed to provide any documentation
demonstrating Attorney Thomas' qualifications but merely
indicated in the request for attorney's fees that she  was a
fourth-year associate.  (Decl. of Robert Sinsheimer, ¶ 10.)  In
response to Defendant's objections, Plaintiff produced the resume
of Attorney Thomas in their Reply.  (Pl.'s Reply, Ex. 1.)

In light of the level of qualification of Attorney Thomas, a reduction of the requested hourly rate for the work she performed to $225 appears more appropriate. This rate is consistent with the prevailing rates applied for attorneys with comparable qualifications in Boston. *Tri-City*, 680 F. Supp. 2d at 315-16 (approving an hourly rate of $275 for a ninth-year associate and an hourly rate of $225 for second-year associates).

 *c. Attorney Tanya Austin*

An hourly rate of $240 is requested for Tanya Austin.[12] To establish Attorney Austin's qualifications, Plaintiff has produced a short biography taken from the website of Boyle, Morrissey & Campo P.C., a Boston firm where Austin is currently employed. (Pl.'s Reply, Ex. 3.) Austin's biography indicates that she graduated from Harvard Law School in 2005 and that she is a member of both the Massachusetts Bar and the California Bar. (*Id.*) Sinsheimer supervised her work at Denner Pellegrino, LLP. (Pl.'s Reply, p. 4.)

An hourly rate of $200 is appropriate for the work performed by Austin. The time records produced by Plaintiff indicate that Austin worked on the present case very early on between January and June 2008. Her involvement in the case was brief compared to that of Attorney Thomas, who worked on the case up until the

---

[12] As with Thomas, *see* Note 11 *supra*, Plaintiff did not initially produce any documentation to show Attorney Austin's qualifications. This information was produced in Plaintiffs' Reply. (Pl.'s Reply, Ex. 2.)

trial, two years later.  In the absence of further evidence regarding Austin's experience as an attorney during the relevant time period, I deem an hourly rate of $200 to be reasonable and compensable for her limited involvement in this case.

    d.  *Paralegal K. Sheehan*

    Plaintiff seeks to recover an hourly rate of $90 for the hours expended by K. Sheehan, a paralegal at Sinsheimer & Associates, LLP.  Defendant contends that this rate is excessive and should be reduced to $60 per hour.  In support of this contention, Defendant relies on a 2003 decision, in which the court reduced the hourly rate for law students from $90.00 to $60.00.  *Martinez*, 265 F. Supp. 2d at 146.

    I am satisfied the requested $90 is in the ball park of rates approved recently for paralegals in this District.  *See Walsh v. Boston Univ.*, 661 F. Supp. 2d 91, 113 (D. Mass. 2009) (holding that a rate of $75 per hour "is roughly in line with rates approved for legal interns"); *Hudson v. Dennehy*, 568 F. Supp. 2d 125, 133 (D. Mass. 2008) (approving $100 hourly rate for paralegal "[t]aking into account the prevailing market rates").  Accordingly, I approve a $90 rate for the work performed by K. Sheehan.

    3.  Adjustments to the Lodestar

    Defendant raises three separate grounds to support a reduction of the lodestar: that (a) Plaintiff failed to produce

time records sufficiently detailed to assess the accuracy of the hours expended, and that Plaintiff has achieved only limited success in light of (b) the amount recovered at trial was modest and (c) only one claim survived.  I will discuss these three arguments in turn.

   *a.    Overall the Detail in the Time Records is Adequate*

   Defendant's first grievance suggests that the requested attorney's fees should be reduced for lack of specificity of the time records.

   It is a bedrock principle that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Grendel's Den*, 749 F.2d at 952; *see also Gay Officers,* 247 F.3d at 297 (warning that failure to keep time records "in reasonable detail" may "have deleterious consequences (such as the slashing or disallowance of an award)").  This is so because some entries "are so nebulous that they fail to 'allow[] the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent." *Lipsett*, 975 F.2d at 938 (quoting *Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir. 1986) (alteration in original)).  In other words, "[w]here that party furnishes time records that are ill-suited for evaluative purposes, the court is hampered in ascertaining whether those hours were excessive,

redundant, or spent on irrelevant issues." *Torres-Rivera*, 524 F.3d at 340.

To show a lack of specificity, Defendant points to entries that are on their face general in nature. For instance, these entries provides for generic descriptions such as "Short conference" dated February 8, 2008 or "Review file" dated October 24, 2008. (Decl. of Robert Sinsheimer, ¶ 10.) These entries also contain incomplete descriptions such as "Call from Lewis regarding ___ form" dated February 8, 2008 or "Read file; Read deposition; Client ___" dated November 4, 2008. (*Id*.) Defendant relies on *Martinez v. Hodgson* to show that the lack of specificity warrants a global reduction of the lodestar by fifty percent. 265 F. Supp. 2d at 140-41. In *Martinez*, the court found that "[w]ith few exceptions, no detail [wa]s given regarding the nature of the factual or legal issues being discussed or reviewed." *Id*. at 140.

In this case, although some entries lack specific details about the work that was performed, most are more specific. For instance, entries with a description, such as that previously discussed, "Review case cited by court regarding Jurisdiction" or "Prepare for and take depo[sition] of Kelley" are sufficiently detailed to pass muster. (Decl. of Robert Sinsheimer, Ex. 2, p. 3, Ex. 3, p. 1.) Given that the lack of specificity only applies to a limited number of entries, I find a reduction of the

attorney's fees by five percent, rather than fifty percent, to be appropriate.  This approach is consistent with the First Circuit's common practice to discount the lodestar when the entries produced only partially afford the court an opportunity to evaluate the accuracy and significance of the hours expended. *Cf. Torres-Rivera*, 524 F.3d at 340 ("the decision to make the fifteen percent global reduction plainly falls within the range of reasonableness").

    *b.   The Amount Recovered Is <u>Not</u> de Minimis*

Defendant's second argument to justify the reduction of the attorney's fees suggests that Plaintiff's victory at trial was only *de minimis*.

Generally, "the most critical factor" in assessing the reasonableness of a fee award "is the degree of success obtained."  *Hensley*, 461 U.S. at 436.  Applying this rule, the Supreme Court has recognized that where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *Id.*  Likewise, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonably fee is usually no fee at all," even though such plaintiff formally "prevails" under 42 U.S.C. § 1988.  *Farrar*, 506 U.S. at 115.

To justify the reduction of the attorney's fees, Defendant relies on the *first* jury verdict, in which "$0" was awarded to Louis Ferraro. As discussed above, this verdict reflected a misunderstanding of the law by the jury and for this specific reason, was not accepted by me. *Cf. Carey v. Piphus,* 435 U.S. 247, 266 (1978) (holding that a constitutional violation "should be actionable for nominal damages without proof of actual injury."). After further deliberations, the jury awarded $14,330.25, the total of the medical bills introduced into evidence, to Mr. Ferraro, and $2,500 to Mrs. Ferraro for loss of consortium. Accordingly, this litigation achieved more than merely providing Plaintiff with "the moral satisfaction of knowing that a federal court concluded that [his] rights had been violated" in some way. *Hewitt v. Helms*, 482 U.S. 755, 762 (1987). The amount of damages awarded to Mr. Ferraro in the *second* verdict clearly shows that Plaintiff's victory at trial is not "purely technical or *de minimis*." *Farrar*, 506 U.S. at 117; *cf. Stefan v. Laurenitis*, 889 F.2d 363, 369 (1st Cir. 1989) (holding "that a $16,000 settlement is not *de minimis*."). To be sure, the damages may not have been generous and perhaps reflected, in particular when considered in connection with the first verdict I declined to accept, the view that Mrs. Ferraro was a party deserving more sympathy than Mr. Ferraro. Nevertheless, I see no reason to reduce the attorney's fees on this ground.

In a final attempt to justify the reduction of the attorney's fees, Defendant compares what he says was the proposed settlement offer made to Plaintiffs ($20,000) and the proposed settlement amount demanded by Plaintiffs ($90,000), with the amount of damages ultimately awarded by the jury ($16,830.25). Plaintiff opposes references made by Defendant to the settlement negotiations on the ground that such references are prohibited under Federal Rule of Evidence 408. But Defendant does not offer evidence of the settlement negotiations "to prove liability for, invalidity of, or amount of a claim that was disputed," as Rule 408 prohibits. FED. R. EVID. 408. Rather, Defendant's references to settlement discussions are offered to show the reasonableness of a fee award and *may* therefore be admissible under Rule 408. *See Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3rd Cir. 2009) ("Rule 408 does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case."); *but see McCown v. City of Fontana*, 565 F.3d 1097, 1104 n.4 (9th Cir. 2009) (noting that it "generally refrain[s] from referencing proposed settlement agreements in light of Federal Rule of Evidence 408" in the attorney's fee context.). In any event, such references are unpersuasive in measuring Plaintiff's success given the small difference ($3,169.75) between the proposed settlement offer made by Defendant ($20,000) and the final amount granted by the jury ($16,830.25). *Cf. Lohman*, 574 F.3d at 169 (holding that

settlement negotiations are an indication of plaintiff's success
where the settlement offer made by defendant during trial was
"more than six times the amount awarded by the jury."). As a
result, I refuse to reduce the attorney's fees on this ground.

   c.   *The Work Performed Among the Several Claims was Largely*
        *Interrelated*

Defendant also urges that the requested fees are "unrelated
to the single successful claim against Defendant." This argument
suggests that, in Defendant's view, several hours were allegedly
excessive because they were expended on claims that were
unsuccessful ultimately. As such, this argument refers to the
doctrine of interrelatedness, i.e., the relationship between the
successful and the unsuccessful claims and the effect, if any, of
this relationship on the amount of fees to be awarded to
Plaintiff. *See Lipsett*, 975 F.2d at 940 (discussing the
"doctrine of interrelatedness"). As a formal matter, the only
claim which survived at trial was the § 1983 claim; all the other
claims were voluntarily dismissed either before or during the
trial.

The doctrine of interrelatedness forbids the award of fees
for hours spent on unsuccessful claims when the work on such
claims "cannot be deemed to have been expended in pursuit of the
ultimate result achieved." *Hensley*, 461 U.S. at 435 (internal
quotation marks and citation omitted). In other words, "if
successful claims are unconnected to, and easily severable from,

the successful claims, hours spent on them will not be compensable." *Martinez*, 265 F. Supp. 2d at 141 (citing *Hensley*, 461 U.S. at 435-36). "This rationale for discounting hours spent on unsuccessful claims does not apply, however, where both the successful and unsuccessful claims arose from the same common core of facts or were based on related legal theories." *Bogan*, 489 F.3d at 428. The reason is that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* (quoting *Hensley,* 461 U.S. at 435). "If the fee-seeker properly documents her claim and plausibly asserts that the time cannot be allocated between successful and unsuccessful claims, it becomes the fee-target's burden to show a basis for segregability." *Lipsett*, 975 F.2d at 941.

In this case, the various claims brought by Plaintiffs are not sufficiently discrete as to warrant undertaking speculative efforts to discount hours spent on those which were ultimately unsuccessful. *First*, these claims relate to a common core of facts. All of them arose from the series of events that occurred after Mr. Ferraro was arrested by the Massachusetts State Police and taken to the police station, in particular the severance of Mr. Ferraro's finger tips. *Second*, Plaintiffs' claims are based on related legal theories. To be sure, Plaintiffs filed a seven-count complaint for violation of 42 U.S.C. § 1983, violation of

Massachusetts Civil Rights Act, assault, battery, intentional
infliction of emotional distress, loss of consortium, and
negligence against both Troopers Kelley and Leduc, but all these
theories were related to the alleged station house abuse of Mr.
Ferraro.

Although "a reduction of a fee award beyond the lodestar
may be appropriate where the plaintiff is unsuccessful on
interrelated claims and ultimately obtains only limited success,"
*Bogan*, 489 F.3d at 430, this case is not of the kind that would
warrant downward departure from the lodestar on that basis.
Following a three-day trial, Plaintiff was successful on the core
§ 1983 claim and recovered an amount which was not *de minimis.*
*See* Section II.B.3.b *supra.* The dismissal of other claims, which
I would characterize as "capillaries," should not undermine
Plaintiff's victory on the "jugular" of this case, i.e., the
§ 1983 claim. As the Supreme Court noted in *Hensley*, "[w]here a
lawsuit consists of related claims a plaintiff who has won
substantial relief should not have his attorney's fee reduced
simply because" some of the claims were dismissed. 461 U.S. at
440. In securing a favorable verdict on the core § 1983 claim,
Plaintiff obtained more than "limited success;" he achieved his
core objective. Accordingly, I conclude that the "combination
of the plaintiff's claim-by-claim success, the relief achieved,
and the societal importance of the rights vindicated," *Jesús*

*Nazario*, 554 F.3d at 207, supports the award of the attorney's fees requested as I have adjusted them.

## C.    *The Costs*

Plaintiff seeks to recover $3,644.72 in costs.  Defendant does not dispute the specifics of the amount requested; rather, he claims that these expenses are "unreasonable" in general.

After reviewing the record, I find the amount of costs requested by Plaintiff should be reduced.  The requested costs include the fee incurred as a result of the filing of the negligence claim in the Suffolk Superior Court for the Commonwealth of Massachusetts ($280.00).  For the same reasons that Plaintiff discounted the time spent on drafting the letter required pursuant to Mᴀss. Gᴇɴ. Lᴀᴡs ch. 258, § 4 and the complaint, *see* Note 2 *supra*, Plaintiff should have discounted the filing fee from the total amount of expenses requested.  The fee incurred for filing this state matter was neither "useful [nor] of a type ordinarily necessary to advance the civil rights litigation to the stage it reached."  *Bogan*, 489 F.3d at 427 (quoting *Webb v. Bd. of Educ.*, 471 U.S. 234, 243 (1985)).  In other words, "commencing these proceedings was not *necessary* to bringing [Plaintiff's] § 1983 claim."  *Id.* at 428.  Accordingly, I will discount the amount of $280.00 from the total amount of costs awarded to Plaintiff and will therefore award $3,364.72 to Plaintiff in costs.

*D.    Summary of Fees and Costs*[13]

| Individual | Requested Rates | Approved Rates | Approved Hours | Total |
|------------|-----------------|----------------|----------------|-------|
| R. Sinsheimer | $395.00 | $350.00 | 110.20 hrs | $38,570.00 |
| L. Thomas | $295.00 | $225.00 | 108.80 hrs | $24,480.00 |
| T. Austin | $240.00 | $200.00 | 14.30 hrs | $2,860.00 |
| K. Sheehan | $90.00 | $90.00 | 13.55 hrs | $1,219.50 |
| Total Lodestar *prior* Discount 5% | | | | $67,129.50 |
| Total Lodestar *after* Discount 5% | | | | $63,773.00 |
| Approved Costs | | | | $3.364.70 |
| **APPROVED TOTAL FEES & COSTS** | | | | **$67,137.70** |

## IV.   CONCLUSION

For the reasons set forth more fully above, I GRANT Plaintiff's petition (Dkt. No. 55.) to the extent of awarding a total of $67,137.70 in attorney's fees and costs to Plaintiff.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[13]   The figures are rounded to the nearest tenth.   In addition, the duplicative entries which amount to a total amount of $177.00, *see* Section II.B.1. *supra*, are not included in the total lodestar.